■ In the Matter of IVAN P. MERBER et al., Petitioners, v. CHARLES J. URSTADT, as Commissioner of Housing and Community Renewal of the State of New York, et al., Respondents.— Determination, dated October 26, 1972, unanimously annulled on the law, without costs or disbursements, and matter remanded to the respondent Commissioner of Housing and Community Renewal of the State of New York for reconsideration in accordance with the views expressed herein. *Patently,* this proceeding should have been disposed of at Special Term, but this court may now consider and determine it on the merits (CPLR 7804, subd. [g]; *Matter of 125 Bar Corp.* v. *State Liq. Auth.,* 24 N Y 2d 174, 180; *Matter of Circle Cts.* v. *Lane,* 29 A D 2d 620). This is an article 78 proceeding in which petitioners, tenants of premises at 50 West 97th Street in Manhattan, seek review and annulment of the determination of the respondent Commissioner authorizing increases in maximum average monthly residential room rents for said premises, owned by respondent Central Park Gardens, Inc., a limited profit housing corporation. Central Park Gardens, Inc., had applied under section 31 of the Private Housing Finance Law for an increase in average monthly room rental and supported its application with financial data indicating an inability to meet current and future operating expenses and to make the payments authorized by section 28 of the Private Housing Finance Law. Though no hearing is mandated by statute, one was held under the aegis of the respondent commissioner. This resulted in a determination by the commissioner directing a two-stage increase, each of 15%: (1) an increase to $51.66 for the year beginning December 1, 1972, and (2) an increase to $58.40 beginning December 1, 1973. It appears that over $119,000 was released from the development escrow fund as being no longer needed for construction or development. In addition, there existed approximately $34,000 in excess of amounts necessary to service debt and approximately $54,000 in income (interest) from the investment of excess funds provided by fund anticipation notes which

inured to the benefit of Central Park Gardens, Inc. After transfers to certain escrow accounts, there remained of the foregoing amounts a sum of about $180,000, which is characterized by petitioners as a "windfall". In determining the rent increases, the respondent commissioner disposed of the "windfall" in large measure by accelerating the vacancy and contingency fund which is set up to provide for critical situations and to cover actual loss from vacancies and collections. This fund has a "ceiling" equal to 25% of the annual rent roll, which limit was met as the result of the commissioner's action. However, petitioners point out that at the time of the landlord's application, over $77,000 had been credited to that fund and under the commissioner's policies, the housing company was required to transfer 3% of its rents per annum to this fund until the maximum was reached. Petitioners' argument that: (1) it is unfair to thus allocate the "windfall" because it, in effect, prepays an item that forms a proper charge over a longer period of time to which future customers should be required to contribute, and (2) the "windfall" should be used to offset operational deficiencies with the anticipated consequence of diminishing the rental increase, must be properly answered. Scrutiny of the record, under these circumstances, discloses the absence of a reasoned explanation for the commissioner's allocation of the "windfall" and thus such determination is arbitrary. It also appears that as a result of an increase approved by the Board of Estimate of the real estate tax exemption available to the project herein, there is a "refund" of approximately $60,000 due to Central Park Gardens, Inc., for the tax year beginning July 1, 1972, which is not reflected in the figures on the basis of which the respondent commissioner's determination was made. The absence of consideration of this retroactive abatement as a factor contributing to a diminished operational deficiency constitutes the second basis on which the determination under review may be rightfully characterized as arbitrary. Petitioner's remaining contentions have been considered and are not persuasive on the issue of the arbitrariness and capriciousness of the determination under review. Concur—Nunez, J. P., Lupiano, Capozzoli, Lane and Yesawich, JJ.